## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **MYRA TANKSLEY** | : **Case No.** |
| **Plaintiff,** | : |
| | : **Judge** |
| v. | : |
| | : **Magistrate Judge** |
| **OHIOHEALTH CORPORATION** | : |
| | : **JURY DEMAND ENDORSED** |
| **Defendant.** | : **HEREON** |
| | : |

### COMPLAINT

Plaintiff Myra Tanksley, by and through undersigned counsel, herein files the following Complaint against Defendant OhioHealth Corporation ("OhioHealth").

### NATURE OF THE CLAIMS

1. This is an employment discrimination action arising out of Ms. Tanksley's employment with OhioHealth.

2. Ms. Tanksley's claims arise under the Americans with Disabilities Act, 42 U.S.C. § 12101 and the ADA Amendments of 2008 ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), and Ohio statutory and common law.

3. Ms. Tanksley seeks relief in the form of compensatory damages for her economic and noneconomic injuries proximately caused by the discriminatory and retaliatory actions on the part of Defendant and she also seeks punitive damages, pain and suffering, attorney's fees and costs in prosecuting this action and any other relief to which the Court deems just and proper.

### PARTIES

4. Plaintiff is a natural person residing in Columbus, Ohio.

5. Upon information and belief, Defendant OhioHealth is an Ohio not-for-profit corporation with its principal place of business in Columbus, Ohio.

1

**JURISDICTION AND VENUE**

6.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, as they involve questions of federal law.

7.     This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims, share all common operative facts with their federal law claims, and the parties are identical. As such, resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency and fairness to the parties.

8.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Ohio.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

9.     Plaintiff timely filed a charge of discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC"). (Exhibit 1)

10.     On or about February 6, 2024, the EEOC issued Ms. Tanksley a Notice of Right to Sue. (Exhibit 2)

11.     Plaintiff timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

**FACTUAL ALLEGATIONS**

12.     As will be demonstrated below, Ms. Tanksley is disabled as that term is defined in both the ADA and the Rehabilitation Act.

13.     Ms. Tanksley is also disabled as that term is defined in R.C. 4112, *et seq,*, and is therefore, a member of a protected class as to that statute.

14.     Ms. Tanksley was hired by Defendant on November 5, 2018, as a bedside

2

Registered Nurse.

15. In the summer of 2020, she was diagnosed with spinal stenosis and bulging discs, an impairment that substantially limited at least one major life activity, that is, she was disabled as defined in the ADA and Rehabilitation Act.

16. As a result of that disability, she requested, and was granted, short term disability benefits by Defendant, which was extended to long term disability ("LTD") per a third-party company, effective in November 2020.

17. Because she was granted LTD as a result of her disability, it cannot be disputed that OhioHealth was aware of the disability.

18. Ms. Tanksley remained on LTD continuously until the end of November 2022.

19. During this time period, Ms. Tanksley filed a Charge with the EEOC based on race, disability and retaliation, and included other illegal discriminatory acts including intimidation, fraud and lying.

20. On August 31, 2022, the EEOC issued a Letter of Determination and Notice of Right to Sue for a previous EEOC charge.

21. Ms. Tanksley never filed a lawsuit but believes that some of the conduct addressed herein was in retaliation for filing that Charge.

22. On October 2, 2022, Ms. Tanksley notified OhioHealth she would be returning to work at the end of November 2022 and that her disability benefits would end at that time, and she could not return to her previous job. She also requested Disability Accommodation in the form of reassignment.

23. In response, on October 6, 2022, OhioHealth requested medical documentation and additional employee documentation but did not send Ms. Tanksley the forms until October 12th.

3

24. Ms. Tanksley returned the completed medical forms and the additional employee documentation forms on October 20, 2022.

25. The medical documentation from Ms. Tanksley's physician confirmed and identified Ms. Tanksley's disability and the need for reassignment as a disability accommodation.

26. Both forms listed some jobs that Ms. Tanksley could do.

27. Since Ms. Tanksley wanted to return to work at the end of November, 2022, her benefits were ending and OhioHealth delayed the interactive process, Ms. Tanksley took the initiative to begin seeking a new position at OhioHealth on her own.

28. From the start, OhioHealth's participation in the interactive process was not in good faith, so Ms. Tanksley had to continued to apply for open positions both for internal and external candidates on her own and even tried to apply to a position for external applicants which OhioHealth did not allow her to do.

29. Before the interactive process began with Ms. Tanksley's case manager, OhioHealth had already falsely written in Ms. Tanksley's Workday that Ms. Tanksley had two declined positions.

30. OhioHealth told Ms. Tanksley that she would be placed in its Workplace Transition Program which does not follow the guidelines of the ADA disability accommodation for reassignment.

31. Ms. Tanksley told OhioHealth repeatedly that she wanted to be under the law and guidelines of the ADA for her accommodation request.

32. OhioHealth stated to Ms. Tanksley on December 2, 2022 on the phone that she would be in their Workplace Transition Program and even went so far as to fraudulently "document" more than once that Ms. Tanksley had requested that she be permitted to participate

in that program.

33.     During OhioHealth's administration of its Workplace Transition Program for Ms. Tanksley's disability accommodation, OhioHealth did not follow ADA law and guidelines which Ms. Tanksley requested OhioHealth to do.

34.     The first job Ms. Tanksley applied to was on October 9, 2022, it was a vacant position for a Surgery Scheduler at OhioHealth Riverside Methodist Hospital ("Riverside"), which stayed "in progress" in Plaintiff's Work History and Inbox Archive in Workday until January 19, 2023.

35.     Then on January 19, 2023, Riverside fraudulently put in Ms. Tanksley's Workday "My Applications" that the job was applied to on January 19, 2023.

36.     OhioHealth did that for two other applications that Ms. Tanksley had submitted.

37.     On  November 1, 2022, Ms. Tanksley contacted OhioHealth about the status of her disability accommodation request, since she had not heard from OhioHealth after submitting medical documentation.

38.     On November 7, 2022, OhioHealth responded that the case was currently being reviewed and that she would be contacted within the next few days.

39.     That did not happen, and Ms. Tanksley was finally contacted on December 2, 2022 regarding the status of her request.

40.     On November 9, 2022, she applied for another job, a case manger ("CM") position at Riverside, and later was scheduled to shadow and interview for that position on November, 22, 2022, but that interview did not occur after Ms. Tanksley shared with the hiring manager her already approved and in place work restrictions which was approved in May, 2020 which did not allow her to work with COVID positive patients, or wear an N-95 mask or a respirator.

41.     Ms. Tanksley also told the hiring manager that she looked forward to meeting her and her team the next day after she shared her work restrictions.

42.     The hiring manager told her she was sorry and "we will not be able to accommodate the restrictions on not working with COVID positive patients and I wish you well in finding something to continue your nursing career," thereby closing the door on that position.

43.     After the hiring manager did not allow Ms. Tanksley to shadow and interview, she fraudulently wrote that Ms. Tanksley declined the position in Ms. Tanksley's Workday "My Applications" along with writing another application date.

44.     On November 18, 2022, an OhioHealth manager from Grant Medical Center ("Grant") called Ms. Tanksley about a CM position at Grant that had the same job duties as the one which she had applied to at Riverside.

45.     She did not apply for the position at Grant since she had already applied for an identical position at Riverside earlier and had already spoken to an employee that worked in that department at Riverside about it before the Grant manager called her.

46.     In fact, she told the Grant manager that she had already applied to the same type of job at Riverside and was expecting a call later that day from Riverside about that position.

47.     Within a couple of days, it was fraudulently written in Ms. Tanksley's Workday "My Applications" that she had declined the position and it also falsely stated she had applied to the position.

48.     When OhioHealth personnel told Ms. Tanksley that she was in their Workplace Transition Program, they also said she had to pay back an alleged debt to OhioHealth before they would place her in another position.

49.     However, Ms. Tanksley continued to request that her disability reassignment be

6

under the ADA law and guidelines.

50. She was also told that a Case Manager named Nancy Miller would be assigned to her and that Miller would be contacting her that upcoming week, which did not happen.

51. Miller finally contacted her on December 23, 2022 by telephone, and Miller proceeded to tell Ms. Tanksley she would be placed in that program.

52. Miller also wrote in emails that Ms. Tanksley would be in that program and that is the process they will use.

53. Miller also falsely accused Ms. Tanksley of expressing interest in the program.

54. Miller also told her in the phone conversation that if she participated in that program, she would be required to repay an alleged debt to OhioHealth caused by OhioHealth. Miller also told Ms. Tanksley she did not want to put her in a position if she doesn't repay Ohio Health back and demanded that Ms. Tanksley tell her on the phone if she would stay in a job after OhioHealth started taking her paycheck before placing her in a position.

55. Ms. Tanksley never agreed to take part in the Workplace Transition Program and was falsely accused of expressing interest, participating in and requesting to be in the program.

56. Ms. Tanksley had to repeatedly inform OhioHealth personnel that she requested Disability Accommodation in the form of reassignment under the ADA laws and guidelines.

57. Besides Nancy Miller, Tara Bautista was also told by Ms. Tanksley that her Disability Accommodation request was under the ADA and Ms. Tanksley also informed Miller, Bautista and HR that OhioHealth was putting false information about her in their documents and doing other retaliatory adverse actions.

58. Despite applying for numerous positions on her own that met the criteria she required to continue working at OhioHealth and in spite of her disability, OhioHealth's interactive

7

process with Ms. Tanksley was not in good faith and violations of the ADA occurred.

59.     By December, 2022 it became apparent to Ms. Tanksley that she was being forced to look for jobs elsewhere because OhioHealth had ignored and interfered with her rights under the ADA, delayed the interactive process, failed to reassign her, were unwilling to follow the ADA, issue threats and intimidated her about being placed in another position, kept her on unpaid medical leave without her consent, falsely accused her of declining positions and applying to a position, and was retaliating against her for seeking to enforce her rights and for filing a previous recent EEOC charge.

60.     On January 19, 2023, OhioHealth told Ms. Tanksley she would be terminated on February 20, 2023 if she couldn't find another position.

61.     Ms. Tanksley was kept on unpaid leave without her consent and no discussion ever occurred. The last two jobs OhioHealth told Ms. Tanksley about were out of her job class and not RN jobs.

62.     However, there were vacant RN jobs that Ms. Tanksley could have been reassigned to, including ones she had already applied to.

63.     On January 26, 2023, Ms. Tanksley was constructively discharged by OhioHealth for refusing to grant her an accommodation of reassignment, delaying the interactive process and not acting in good faith during the interactive process, treating her adversely, falsifying documents and for retaliating against her for filing a previous, recent EEOC charge.

64.     Despite being constructively discharged on that date, upon information and belief, Ms. Tanksley is still listed as a current employee in OhioHealth's HR records and as a current member in OhioHealth's health insurance plan.

65.     As a result of OhioHealth's conduct addressed above, Ms. Tanksley suffered

damages in amount to be determined at trial.

**FIRST CLAIM FOR RELIEF**
**Failure To Accommodate (ADA And Rehabilitation Act)**

66.     Plaintiff incorporates all her allegations as if fully rewritten herein.

67.     Ms. Tanksley suffers from a disability as described herein.

68.     Defendant was aware of her disability.

69.     Defendant failed to reasonably provide the requested accommodation that would allow Ms. Tanksley to enjoy continued employment and perform the essential functions of her position. Nor did Defendant demonstrate that it could not grant Ms. Tanksley's request for reasonable accommodation because to do so would impose an undue hardship.

70.     Under these circumstances, Defendant violated Ms. Tanksley's rights under the ADA and the Rehabilitation Act to receive reasonable accommodation for her disability.

71.     For its failure to accommodate, OhioHealth is liable to Ms. Tanksley for damages in an amount to be determined at trial.

72.     As a direct and proximate cause of Defendant's actions, Ms. Tanksley has been damaged in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**Disability Discrimination (ADA And Rehabilitation Act)**

73.     Plaintiff incorporates all her allegations as if fully rewritten herein.

74.     Ms. Tanksley's constructive discharge and the other misconduct and adverse employment actions as described herein were motivated in whole or in part by Plaintiff's participation in protected activity by requesting reasonable accommodations for her disability in accordance with the conditions within the ADA.

75.     For its disability discrimination, OhioHealth is liable to Ms. Tanksley for damages in an amount to be determined at trial.

9

76. As a direct and proximate cause of Defendant's actions, Ms. Tanksley has been damaged in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### Discrimination and Retaliation Under R.C. 4112

77. Plaintiff incorporates all her allegations, as if fully rewritten herein.

78. Ms. Tanksley was an "employee" as that term is defined in R.C. 4112.

79. OhioHealth is an "employer" as that term is defined in R.C. 4112.

80. Ms. Tanksley is disabled as defined by the ADA and OhioHealth was aware of that fact.

81. Because OhioHealth knew Ms. Tanksley was disabled and subjected her to the discriminatory treatment described above, she was a member of a protected class under R.C. 4112.

82. Ms. Tanksley was subjected to the conduct alleged above because she was disabled.

83. Ms. Tanksley was retaliated against, as described above, because of her complaints that OhioHealth was not properly handling her ADA claims and for filing a recent previous EEOC charge.

84. That retaliation included, among other things, not granting her ADA accommodations in a timely manner and constructively discharging her, both of which are considered an "adverse employment action" under R.C. 4112.

85. For its violations of R.C. 4112, OhioHealth is liable to Ms. Tanksley for damages in an amount to be determined at trial.

86. As a direct and proximate cause of Defendant's actions, Ms. Tanksley has been damaged in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### Retaliation (ADA And Rehabilitation Act)

87. Plaintiff incorporates all her allegations as if fully rewritten herein.

88. Ms. Tanksley engaged in protected activity when she requested an accommodation for her disability and otherwise attempted to exercise her right to non-discrimination.

89. As a direct result of Ms. Tanksley's request for a reasonable accommodation for her disabling condition and otherwise exercise her rights, Defendants retaliated against her by failing to implement reasonable accommodations, subjecting her to harassment and punitive treatment, culminating in her constructive discharge on January 26, 2023.

90. For its violations of the ADA's and Rehabilitation Act's ban on retaliation, OhioHealth is liable to Ms. Tanksley for damages in an amount to be determined at trial.

91. As a direct and proximate cause of Defendant's actions, Ms. Tanksley has been damaged in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF
### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.
### (Retaliation)

92. Plaintiff incorporates all her allegations as if fully rewritten herein.

93. Plaintiff was at all relevant times an "employee" within the meaning of 42 U.S.C. § 2000e(f).

94. Defendant was at all relevant times an "employer" within the meaning of 42 U.S.C. § 2000e(b).

95. Plaintiff engaged in the activity protected by 42 U.S.C. § 2000e-3 when she filed an EEOC Charge in 2021 and 2022.

96. Defendant violated 42 U.S.C. § 2000e-3 when it constructively discharged Ms. Tanksley on January 26, 2023, at least partially due to her having filed an EEOC charge in 2021 and 2022.

97. For its violations of Title VII's ban on retaliation, OhioHealth is liable to Ms.

Tanksley for damages in an amount to be determined at trial.

98.     As a direct and proximate cause of Defendant's actions, Ms. Tanksley has been damaged in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
### Retaliation Under Ohio Revised Code Chapter 4112

99.     Plaintiff realleges and restates the facts and allegations above, as if fully rewritten herein.

100.    Ms. Tanksley was an "employee" as that term is defined in R.C. 4112.

101.    OhioHealth was an "employer" as that term is defined in R.C. 4112.

102.    As noted previously, Ms. Tanksley is disabled.

103.    Because Ms. Tanksley is disabled, she is a member of a protected class under R.C. 4112.

104.    At the time she was constructively discharged, she was physically able to perform the duties of the job she was seeking reassignment to, with or without accommodations and otherwise met the requirements of her job and laws pertaining to the relationship between employer and employee.

105.    Ms. Tanksley was subjected to the conduct alleged above, including her ultimate constructive discharge, at least in part because she filed an EEOC complaint in 2021 & 2022.

106.    For its violations of R.C. 4112's ban on retaliation, OhioHealth is liable to Ms. Tanksley for damages in an amount to be determined at trial.

107.    As a direct and proximate cause of Defendant's actions, Ms. Tanksley has been damaged in an amount to be determined at trial.

12

## SEVENTH CLAIM FOR RELIEF
### Constructive Discharge

108.    Plaintiff realleges and restates the facts and allegations above, as if fully rewritten herein.

109.    Ohio recognizes a cause of action for constructive discharge when an employer creates a job environment that is so intolerable that a reasonable person under the circumstances would have felt compelled to resign.

110.    The conduct addressed above created a job environment that was so intolerable that a reasonable person under the circumstances would have felt compelled to resign.

111.    Because OhioHealth created a job environment that was so intolerable that a reasonable person under the circumstances would have felt compelled to resign, Ms. Tanksley's resignation constitutes a constructive discharge under Ohio law.

112.    As a direct and proximate cause of Defendant's actions, Ms. Tanksley has been damaged in an amount to be determined at trial.

WHEREFORE, Ms. Tanksley demands the following:

1.  Lost pay and benefits, compensatory and punitive damages, liquidated damages and attorney fees and costs, in an amount to be determined at trial, plus the equitable remedies of reinstatement and/or front pay.

Respectfully submitted,

DEWITT LAW, LLC

/s/ Michael W. DeWitt
Michael W. DeWitt (0066896)
4200 Regent Street
Suite 200
Columbus, Ohio 43219
(614) 398-2886
(614) 750-1379 (facsimile)
mdewitt@dewittlawco.com
*Attorney for Plaintiff*

13

## JURY DEMAND

Plaintiff demands that a jury decide all claims in this matter that are triable to a jury.

/s/ Michael W. DeWitt
Michael W. DeWitt

**EXHIBIT**

**1**

exhibitsticker.com

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act<br>Statement and other information before completing this form. | Charge Presented To:<br><br>EEOC | Agency(ies) Charge No(s):<br><br>532-2023-00931 |
|---|---|---|
| | | and EEOC |

_State or local Agency, if any_

| I Name (indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)<br><br>Myra Tanksley | Home Phone<br><br>614-378-1989 | Year of Birth |
|---|---|---|

Street Address

933 Kelton Ave.

COLUMBUS, OH 43206

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (_If more than two, list under PARTICULARS below._)

| Name<br><br>OhioHealth | No. Employees, Members<br><br>501+ Employees | Phone No.<br><br>(614) 788-8860 |
|---|---|---|

Street Address

3430 OhioHealth Parkway

COLUMBUS, OH 43202

| Name | No. Employees, Members | Phone No. |
|---|---|---|

| Street Address | City, State and ZIP Code | |
|---|---|---|

| DISCRIMINATION BASED ON<br><br>Disability, Retaliation | DATE(S) DISCRIMINATION TOOK PLACE<br><br>Earliest                          Latest<br>10/02/2022                    02/08/2023<br><br>Continuing Action |
|---|---|

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent on November 5, 2018, as a bedside Registered Nurse. Respondent is aware of my disability because, in August 2020, I was granted short term disability by Respondent, which was extended to long term disability per their ERISA insurance company. After notifying OhioHealth (OH) I would be returning to work after being out on LTD and requesting ADA disability Accommodation in the form of reassignment, I was forced to look for other jobs and constructively discharged. On 10/2/22 I notified OH that I will be returning to work at the end of November 2022 from being on long term disability & that my benefits will expire as well. I specifically requested a Disability Accommodation in the form of reassignment since I won't be able to return to my previous job as a bedside RN. I also told them about what type of job I needed, would like to do, etc. OH requested medical documentation on 10/6/22 but didn't send the forms till the 12th. I sent the completed medical forms back on 10/20/22. On 10/9/22 I applied for a vacant position at OH RMH which stated "in progress" till 1/19/23 (see 1/19/23 update in recent inquiry). On 11/1/22, I contacted OH about my disability accommodation status since I had not heard from them after submitting med documentation. On 11/7/22 OH responded that my case was currently being reviewed & that I will be contacted within the next few days. That did not happen. On 11/9/22, I applied for another job (RMH CM) & later was scheduled to shadow & interview on 11/22/22.  Then OH lied & put in Workday that I had declined the

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Myra Tanksley**<br><br>**05/12/2023**<br><br><br>_Charging Party Signature_ | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (_month, day, year_) |

Page 1 of 4

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br><br>EEOC | Agency(ies) Charge No(s):<br><br>**532-2023-00931** |
|---|---|---|
| | | and EEOC |

*State or local Agency, if any*

position. OH had a manager from Grant (GMC) called me on 11/18/22 about a CM job that has the same job duties that the RMH CM job had. I did not apply for the GMC job because I had already applied for the same job at RMH on 11/9/22 & had talked on the phone with RMH about their job before GMC called. I was expecting another call from RMH about their job that same day & I told the GMC manager that. The GMC manager lied & put in Workday "My Applications" that I declined the job, with date applied 11/17/22, even though I never apply for it. Later on 12/27/22, Miller tried to get me to say I wasn't interested in the GMC job. OH had 2 different recruiters listed for those GMC & RMH CM jobs in the "My Applications" list then later changed them to just 1 recruiter. OH falsified the "My Applications" list in Workday & it remains that way. All other positions that I have applied to (1 in October, 2022 & 2 more in December, 2022) are not in that list except the RMH CM job, then those positions that I had previously applied to in October 2022 & December 2022 were added to the list on 1/19/23 which falsely stated that I applied to them on 1/19/23. On 1/19/23, OH also falsely accused me of applying for a job that had the same job number of a job I actually had applied to but the jobs have two different job titles. I received 2 separate letters, 1 dated 11/29/22 & 1 dated 12/2/22 from Tara Bautista, Interim Manager. Bautista lied & said that I had "requested" to participate in their Workplace Transition Program. She also stated that if I'm given a position after my participation in their program, I am required to repay OH. After receiving that email from Bautista on 12/2/22, about their program & the alleged overpayment, I called her the same day which was on a Friday and told her that I am requesting an ADA disability accommodation. She told me that a Case Manager would be assigned to me named Nancy Miller & Miller would be contacting me that upcoming week which did not happen. Miller finally contacted me on 12/23/22 by phone. Besides Bautista falsely accusing me of requesting to be in their program, I was told by Miller that I will be in that program. When I said "ADA" Miller said "transitional work". Miller has also tried to make me say that I want to be in that program by email & on the phone (recorded). I was also told that I would have to repay OH for an alleged overpayment if placed in a position. Miller asked me had I received that letter from Tara. Miller mentioned that I wanted a Workplace Reassessor (sp?) to return to work which was false. I told her I had requested an ADA Disability Accommodation. Miller then asked me did Tara's letter indicate I was overpaid by OH. She said "I guess my question for you is this, you understand if I put you in the Workplace Transition Program & we find you a job, you understand that OH will start taking that money, correct"? I told her that I do not consent because of all the other things that were happening at that time. Then she said, "here is my question for you, this is what I need to know the answer to, if I put you in a job, & you come to work & OH takes your paycheck, are you gonna stay in that job, because I don't want to place you in the job to be frank with you". She continued, "You accept that job but then if OH takes your pay & you don't come to work, I'm just trying to be frank here". She was very hostile. She said in an email that their program is what will be use. I told her that my request to return to work was an ADA Disability Accommodation in the form of reassignment. OH has tried to force me into their program by falsely accusing me of requesting, expressing interest & participating in their program. Then Miller told me in an email, it starts 1/3/23 & the Transition Work process will be use. I was also sent a Vocational Assessment form. This is also about retaliation because I filed an EEOC complaint which was dismissed with a notice of right to sue on 8/31/22. It was based on race, disability & retaliation & included other illegal discriminatory acts including intimidation, fraud & lying which continues to happen in this case. OH tried to get me to do things so they could terminate me & make me commit insurance fraud & that is why they were sending me return to work requests for myself & other employees after I was out on STD & had just filed a claim for long term disability. OH falsely claimed they issued me another ID badge on 11/20/20. Currently, in my inbox they are trying to get me to endorse an employee I don't know & it's been there 5 months. I have applied to 3 jobs that are still in progress (see 1/19/23 update in recent inquiry). The last job I wanted to apply to, I was not able to apply to because it was not posted internally but it was posted on an external job board and I told Miller about it. Miller told me on 12/27/22 that she had put another job on hold, would contact the manager who should call me by 1/3/23 (didn't call and I told her so) but didn't tell me what the job was. I asked her what it was & "what about the other jobs" I have applied to. After I told her about a job I wanted to apply to and was unable to do so, Miller told me not to apply to jobs anymore but just tell her about them. She said this is not how the process works. I told her about the jobs I had applied to. On 1/4/23, Miller stated she contacted the manager again & will let me know if she hears back. I never received a call from that manager that she said she contacted to call me. But Miller said the manager said since I couldnt stand and walk (which is a lie) I couldnt do the job. On 12/28/22, Miller told me that the job I told her I wanted to apply to was not on the approval board. However, I found the job was posted on an external job board and that is how I knew the job was available and vacant. On 12/28/22 Miller told me that Shelly Baker, manager for the RMH CM job that I applied to on 11/9/22 told her I declined the position because of my Covid-19 restrictions. That is a malicious lie. I informed Baker about my ongoing workplace restrictions which consisted of not working with Covid-19 patients (r/o & positive) & not able to use n-95 or PAPR masks because they were already in place & had been approved on 4/28/20 per an email on 5/4/20. Besides telling Baker of my ongoing workplace restrictions, I stated in the same email that "I am looking forward to meeting you & your team tomorrow morning". I was scheduled to shadow & interview the next day which was on November 22, 2022. After I told Baker about those workplace restrictions she said "thank you for sharing your additional restrictions as I definitely don't want to waste your time, but we

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Myra Tanksley**<br><br>**05/12/2023**<br><br><br>*Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:

EEOC | Agency(ies) Charge No(s):

**532-2023-00931** |
|---|---|---|
| | | and EEOC |

*State or local Agency, if any*

wouldn't be able to accommodate the restrictions on not working with r/o or COVID positive patients, & not wearing an N-95 or PAPR, I'm sorry. I wish you well in finding something to continue your nursing career". Baker closed the door on that position & its one of the times OH failed to reassign me. Then, she falsely accused me of declining the position & put it in Workday in "My Applications". The last 2 positions that Miller told me about after I reported her misconduct were non-RN positions even though there were vacant RN positions including RN positions I had already applied to. I've been forced to look for other jobs elsewhere because OH has ignored & interfered with my rights under the ADA, delayed the interactive process, failed to reassign me more than once, unwilling to follow the ADA, issue threats, committed fraud & other illegal & hostile discriminatory acts done towards & against me. On 1/19/23 OH threatened to terminate me on 2/20/23 while keeping me on unpaid leave and refusing to reassign me. On 1/19/23 more FRAUD: OH continues to falsely request unpaid medical leave for me till 2/4/23; previous jobs I applied to that were not previously listed in My Applications & were "in progress" are now listed with date applied 1/19/23. Because OH refuse to reassign me under the laws and guidelines of ADAs disability accommodation, retaliated against me for filing a previous complaint and committed other unlawful acts including fraud and lying, I was forced into a Constructive Discharge and a Constructive Discharge notice was sent to OH on January 26, 2023.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.

**Digitally Signed By: Myra Tanksley**

05/12/2023

*Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Cleveland Field Office
1240 E 9th St, Suite 3001
Cleveland, OH 44199
(216) 306-1120
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 02/06/2024

To: Myra Tanksley
933 Kelton Ave.
Columbus, OH 43206

Charge No: 532-2023-00931

EEOC Representative:         Legal Unit
(267) 589-9707

**EXHIBIT**

**2**

exhibitsticker.com

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 532-2023-00931.

On behalf of the Commission,

Digitally Signed By:Dilip Gokhale
02/06/2024
Dilip Gokhale
Director

Cc:
Lindsey D'Andrea
OhioHealth Corporation
3430 Ohio Health Pkwy
Columbus, OH 43202

Samuel Endicott
3430 OhioHealth Parkway
Columbus, OH 43202


Please retain this notice for your records.